IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,          3:13-cr-00444-BR

        Plaintiff,          OPINION AND ORDER

v.

JACK HOLDEN,

        Defendant.

**BILLY J. WILLIAMS**
United States Attorney
**CLAIRE M. FAY**
**DONNA MADDUX**
Assistant United States Attorneys
1000 S.W. Third Avenue
Suite 600
Portland, OR  97204
(503) 727-1000

       Attorneys for Plaintiff

**LISA C. HAY**
Federal Public Defender
**JESSICA GREENLICK SNYDER**
Research and Writing Attorney
101 S.W. Main Street
Suite 1700
Portland, OR  97201
(503) 326-2123

       Attorneys for Defendant

**BROWN, Senior Judge.**

This matter comes before the Court on Defendant Jack Holden's Motion (#318) for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  On April 1, 2020, the Court heard oral argument and took the Motion under advisement.  For the reasons that follow, the Court **DENIES** Defendant's Motion with leave to renew when Defendant has satisfied the exhaustion provision of 18 U.S.C. § 3582(c)(1)(A).

The Court **DIRECTS** counsel for the government to ensure a copy of this Opinion and Order is delivered to FCI Sheridan Warden Josias Salazar.

## BACKGROUND

On September 24, 2013, a grand jury charged Defendant Jack Holden and a co-conspirator with one Count of Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. § 1349, five counts of Wire Fraud in violation of 18 U.S.C. § 1343, three counts of Mail Fraud in violation of 18 U.S.C. § 1341, five counts of Money Laundering in violation of 18 U.S.C. § 1957, and one Count of Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h).

The matter went to trial on September 28, 2015.  On October 8, 2015, the government dismissed one count of Money Laundering.  On October 15, 2015, the jury returned a Verdict

finding Defendant guilty on all remaining counts.

On August 5, 2016, the Court entered a Judgment sentencing Defendant to a term of 87 months in prison; restitution of $1,410,760; three years of supervised release; a money judgment of $1,410,760; and a special assessment of $1,500.

On August 11, 2016, Defendant appealed his conviction and sentence.

On November 8, 2018, the Ninth Circuit affirmed Defendant's conviction, but the court vacated Defendant's "custodial sentence" due to this Court's miscalculation of the applicable sentencing range under the United States Sentencing Guidelines and also vacated the restitution portion of the Judgment. The matter was remanded to this Court for further proceedings.

On February 20, 2019, the Court held a resentencing hearing. On February 21, 2019, the Court entered a Judgment sentencing Defendant to a term of 87 months in prison; restitution of $1,410,760; three years of supervised release; a money judgment of $1,410,760; and a special assessment of $1,500.

On March 20, 2020, Defendant filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in which he seeks an order reducing his sentence to time served on the grounds that he "meets the criteria for compassionate release and . . . his vulnerability to infection by the coronavirus (COVID-19) places him at a serious risk of death if he remains in

the custody of the Bureau of Prisons."

On March 24, 2020, defense counsel emailed the Court and noted

> [Defendant] meets the[] criteria [for early
> release under 18 U.S.C. § 3582(c)(1)(A)(i)]
> because he is 79 years old, has served over 75% of
> his sentence (in fact, 87%), and has serious
> deterioration in physical health from his
> diabetes, low kidney function, and heart issues;
> he also suffers from cognitive decline.
>
>                    *  *  *
>
> The coronavirus pandemic is what makes review of
> [Defendant's] application urgent.

On March 24, 2020, the Court held a telephone status conference to assess the urgency of the matter after which the Court directed the parties to file supplemental briefing and set oral argument on the Motion for April 1, 2020.

Before the hearing defense counsel emailed the Court on March 30, 2020, with the following information:

(1) "The government identified a math error in the defense petition, which the defense concedes. [Defendant] has not yet served 75% of the imposed term of imprisonment, as would be required for relief under Application note 1(B) of the guideline [U.S.S.G. § 1B1.13]. For this reason, the defense is now asserting that [Defendant's] advanced illnesses and deteriorating physical health qualify him for relief under App. Note 1(A)(i) and (ii), rather than under Note (B), and that in the

alternative, the COVID pandemic constitutes a
compelling reason for relief";

(2) Defendant "is currently scheduled for release to home
confinement pursuant to the Second Chance Act's
eligible elderly offender program on September 2,
2020"; and

(3) Defendant submitted a request for compassionate release
at some point, but the parties agree[] . . . 30 days
have not elapsed since it was submitted.

Also on March 30, 2020, the government filed its Response to
Defendant's Motion and Defendant filed a Supplemental Brief on
his Motion.

On April 1, 2020, the Court heard oral argument by telephone
on Defendant's Motion and took it under advisement.

On April 2, 2020, Defendant filed a Second Supplemental
Brief on his Motion, and on April 3, 2020, the government
provided the Court with additional authority by email.


**DISCUSSION**

As noted, Defendant moves for an order reducing his sentence
to time served pursuant to the First Step Act (FSA), 18 U.S.C.
§ 3582(c)(1)(A), on the grounds that he has serious degenerative
physical conditions or, in the alternative, that the COVID-19
pandemic provides an independent ground for release.

## I.    FSA Compassionate Release Standards

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824–25 (2010)(quoting 18 U.S.C. § 3582(b)).  Compassionate release provides an exception in extraordinary cases.

Prior to December 21, 2018, the provision of Title 18 relating to compassionate release of prisoners provided:

> [T]he court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
>      (i) extraordinary and compelling reasons warrant such a reduction
>
>                           * * *
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[1]

18 U.S.C. § 3582(c)(1)(A)(i)(2018).

---

[1] 28 U.S.C. § 994(t) provides:  "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.  Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."

On December 21, 2018, the FSA amended 18 U.S.C.

§ 3582(c)(1)(A) to provide:

> [T]he court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier* may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction
>
> &#42; &#42; &#42;
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

First Step Act of 2018, PL 115-391, December 21, 2018, 132 Stat.

5194 (emphasis added).

The applicable Sentencing Commission policy statement

relating to the FSA is found at U.S.S.G. § 1B1.13. Application

Note 1 to § 1B1.13 sets out the extraordinary and compelling

reasons as follows:

> **1. Extraordinary and Compelling Reasons.**-
> . . . extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> **(A) Medical Condition of the Defendant.**--
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and

advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is--

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.**-- The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

* * *

**(D) Other Reasons.**--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Emphasis in original.

A defendant seeking a reduction in his terms of imprisonment bears the burden to establish both that he has satisfied the procedural prerequisites for judicial review and that compelling and extraordinary reasons exist to justify compassionate release. 18 U.S.C. § 3582(c)(1)(A).

## II. Court's Authority to Modify Defendant's Sentence

As noted, "'[a] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon*, 560 U.S. at 824-25 (2010)(quoting 18 U.S.C. § 3582(b)). *See also United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003)(courts generally may not correct or modify a prison sentence after it has been imposed unless expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure). The FSA, however, provides a limited exception for courts to modify a final judgment of conviction either

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant *after the defendant has fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or the lapse of 30 days from the receipt of such a request by the warden* of the defendant's facility, whichever is earlier.

18 U.S.C. § 3582(c)(1)(A)(emphasis added).

**A.  Date of Defendant's Request for Compassionate Release under the FSA**

It is undisputed that Defendant submitted a request to the Bureau of Prisons (BOP) for compassionate release pursuant to § 3582(c)(1)(A) and that he did not submit his request until March 24 or 25, 2020.  It is also undisputed that the BOP has not yet denied Defendant's March 24 or 25, 2020, request nor have 30 days passed from the time the BOP received Defendant's request.

The record also reflects Defendant is being considered for early release pursuant to the Elderly Offender Pilot Program (EOPP) under the Second Chance Act (SCA), 34 U.S.C. § 60541. Although it is not entirely clear how Defendant came to be considered for release under the EOPP, the record reflects on February 25, 2020, Defendant's case manager at FCI Sheridan, Jamie Pedraza, emailed the Warden of FCI Sheridan as follows:

> [Defendant] is a 79-year-old male serving 87 months for Conspiracy to Commit Mail and Wire Fraud; Wire Fraud and Engaging in Monetary Transaction with Criminally Derived Property and Money Laundering Conspiracy.  To date, he has served 60% of his sentence and meets all criteria set forth under the FSA Elderly Offender Pilot Program.  Additionally, he has been approved to relocate and reside with his daughter in Orting, Washington.  He has a current PRD of 12-17-2021. The unit team is requesting a DHD placement on, or after, 9-2-2020.  Thank you for your consideration.

Def.'s Second Suppl. Br., Ex. 9 at 1.

At the hearing on April 1, 2020, Defendant suggested the Court could consider the February 25, 2020, email

recommending Defendant for the EOPP as a request for
compassionate release pursuant to the FSA, in which case 30 days
have elapsed from the time Defendant submitted that request to
the BOP for early release.  The EOPP is a program administered by
the BOP pursuant to the SCA, 34 U.S.C. § 60541.  Specifically,
the SCA authorizes the Attorney General to "conduct a pilot
program to determine the effectiveness of removing eligible
elderly offenders . . . from Bureau of Prisons facilities and
placing such offenders on home detention until the expiration
of the prison term to which the offender was sentenced."
34 U.S.C.A. § 60541(g)(1)(A).  The SCA permits the Attorney
General to release eligible offenders from BOP facilities "upon
written request from either the Bureau of Prisons or an eligible
elderly offender."  34 U.S.C.A. § 60541(g)(1)(B).  The SCA also
permits the Attorney General to waive the requirements of 18
U.S.C. § 3624[2] "as necessary to provide for the release of some
or all eligible elderly offenders . . . from Bureau of Prisons
facilities to home detention for the purposes of the pilot
program."  34 U.S.C.A. § 60541(g)(1)(C).  Finally, the SCA
provides:

---

[2] This section notes "[a] prisoner shall be released by the
[BOP] on the date of the expiration of the prisoner's term of
imprisonment, less any time credited toward the service of the
prisoner's sentence"; provides guidance as to the factors that
the BOP must consider when calculating a prisoner's sentence; and
addresses issues related to supervised release.

> A violation by an eligible elderly offender . . .
> of the terms of home detention . . . shall result
> in the removal of that offender from home
> detention and the return of that offender to the
> designated Bureau of Prisons institution in which
> that offender was imprisoned immediately before
> placement on home detention . . . or to another
>
> appropriate Bureau of Prisons institution, as
> determined by the Bureau of Prisons.

34 U.S.C.A. § 60541(g)(2).

The SCA is a statutory scheme separate from the FSA. The SCA is administered solely by the BOP and does not require the BOP to obtain permission from the sentencing court before it approves inmates for release to home detention because a release pursuant to the SCA is a change only in the location of an inmate's confinement rather than a reduction in an inmate's sentence. *See* 18 U.S.C. § 3621(b)(the BOP is required to "designate the place of the prisoner's imprisonment."). *See also United States v. Ceballos,* 671 F.3d 852, 855 (9th Cir. 2011) ("'While a [district court] judge has wide discretion in determining the length and type of sentence, the court has no jurisdiction to select the place where the sentence will be served. Authority to determine place of confinement resides in the executive branch of government and is delegated to the Bureau of Prisons.'")(quoting *United States v. Dragna*, 746 F.2d 457, 458 (9th Cir. 1984)). A placement to home detention by the BOP pursuant to the SCA, therefore, differs substantially in kind and scope from a defendant's request for reduction of sentence

pursuant to the FSA like Defendant seeks in his pending Motion.

The Court notes the record in this case reflects only that the BOP considered Defendant for home placement pursuant to the EOPP under the SCA. The February 25, 2020, email from Pedraza to the Warden of FCI Sheridan indicates Defendant was considered for placement in home detention, but the email does not indicate Defendant requested or was considered for a reduction in his sentence pursuant to the FSA. The Court, therefore, concludes on this record that Defendant has not established the February 25, 2020, email (or any other document in the record before March 24 or 25, 2020) constituted a request for reduction of Defendant's sentence pursuant to the FSA. Moreover, due to the fundamentally different nature of the FSA and the SCA, the Court declines to deem Defendant's February request to be one for a reduction in sentence within the parameters of the FSA.

Accordingly, the Court concludes the February 25, 2020, email does not constitute a request to the BOP that began the 30-day period under the FSA exhaustion provision, 18 U.S.C. § 3582(c)(1)(A).

**B. Defendant's Failure to Exhaust Administrative Remedies**

Defendant concedes if the Court does not deem the February 25, 2020, email to be a request for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), Defendant has not

satisfied the FSA exhaustion criteria.  Defendant, however,

asserts the Court, nevertheless, has the authority to waive the

exhaustion provisions of the FSA "due to the urgency of the

COVID-19 pandemic, the statutory requirements, and the

historically recognized equitable exceptions to the exhaustion

requirement."  Def.'s Suppl. Br. at 13.  Defendant relies on

a number of cases in which the Ninth Circuit excused

administrative-exhaustion requirements in other contexts such as

petitions for habeas corpus and inmate civil-rights actions

pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Agents*,

403 U.S. 388, 397 (1971), when the courts concluded there were

not any administrative remedies that were effectively

"available."  For example, the Ninth Circuit did not require an

inmate to exhaust his administrative remedies before filing a

*Bivens* action when the inmate "took reasonable and appropriate

steps to exhaust his Fourth Amendment claim and was precluded

from exhausting, not through his own fault but by the Warden's

mistake."  *Nunez v. Duncan*, 591 F.3d 1217, 1225-26 (9th Cir.

2010)(finding the mistake of the prison Warden "rendered [the

prisoner's] administrative remedies effectively unavailable.").

The Ninth Circuit also excused inmates' failures to exhaust

administrative remedies before bringing civil-rights actions

pursuant to 42 U.S.C. § 1983 when a prison's improper screening

of a grievance rendered administrative remedies "effectively

unavailable," *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010), and when a jail did not inform a prisoner of the process for filing a complaint even after repeated requests, *Albino v. Baca*, 747 F.3d 1162, 1177 (9th Cir. 2014). Similarly, the Ninth Circuit excused an inmate's failure to exhaust administrative remedies before filing a civil-rights action pursuant to § 1983 when the inmate established he was under threat of retaliation for reporting an incident. *McBride v. Lopez*, 807 F.3d 982, 986 (9th Cir. 2015). In all of these cases the Ninth Circuit excused the administrative-exhaustion requirement found in the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, which provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

In *Ross v. Blake* the Supreme Court reviewed the authority of district courts to excuse administrative exhaustion when it is required by statute as in the PLRA. 136 S. Ct. 1850 (2016). In *Ross* an inmate brought an action pursuant to 42 U.S.C. § 1983 against correctional officers for use of excessive force. One officer moved for summary judgment on the ground that the plaintiff failed to exhaust his administrative remedies as required by the PLRA. The district court granted the officer's motion, and the plaintiff appealed. The Fourth Circuit Court of

Appeals reversed the district court and noted the PLRA's

> "exhaustion requirement is not absolute. . . .
> [T]here are certain special circumstances in
> which, though administrative remedies may have
> been available[,] the prisoner's failure to comply
> with administrative procedural requirements may
> nevertheless have been justified.  In particular,
> that was true when a prisoner reasonably — even
> though mistakenly — believed that he had
> sufficiently exhausted his remedies."

*Ross*, 136 S. Ct. at 1856 (quoting *Blake v. Ross*, 787 F.3d 693,

698 (4th Cir. 2015)).  The Supreme Court accepted *certiorari* and

reversed the Fourth Circuit's decision.  The Supreme Court noted

the exhaustion requirement of the PLRA provides:  "No action

shall be brought with respect to prison conditions under

section 1983 of this title, or any other Federal law, by a

prisoner . . . until such administrative remedies as are

available are exhausted."  42 U.S.C. § 1997e(a).  "[T]hat

language is 'mandatory' [and] . . . suggests no limits on an

inmate's obligation to exhaust — irrespective of any 'special

circumstances.'"  136 S. Ct. at 1856 (citing *Jones v. Bock*, 549

U.S. 199, 211 (2007)("There is no question that exhaustion is

mandatory under the PLRA")).  In addition, "that mandatory

language means a court may not excuse a failure to exhaust, even

to take such circumstances into account."  *Id*. (citations

omitted).  The Supreme Court explained:

> No doubt, judge-made exhaustion doctrines, even if
> flatly stated at first, remain amenable to
> judge-made exceptions.  *See McKart v. United
> States*, 395 U.S. 185, 193 (1969)("The doctrine of

> exhaustion of administrative remedies . . . is,
> like most judicial doctrines, subject to numerous
> exceptions"). But a statutory exhaustion
> provision stands on a different footing. There,
> Congress sets the rules — and courts have a role
> in creating exceptions only if Congress wants them
> to. For that reason, mandatory exhaustion
> statutes like the PLRA establish mandatory
> exhaustion regimes, foreclosing judicial
> discretion. *See, e.g., McNeil v. United States*,
> 508 U.S. 106, 111 (1993)("We are not free to
> rewrite the statutory text" when Congress has
> strictly "bar[red] claimants from bringing suit in
> federal court until they have exhausted their
> administrative remedies"). Time and again, this
> Court has taken such statutes at face value —
> refusing to add unwritten limits onto their
> rigorous textual requirements.

*Ross*, 136 S. Ct. at 1857 (citations omitted). The Supreme Court

noted, however, that the PLRA contains "its own, textual

exception to mandatory exhaustion." *Id.* at 1858. Specifically,

"the exhaustion requirement [of § 1997e(a)] hinges on the

'availab[ility]' of administrative remedies: An inmate . . .

must exhaust available remedies, but need not exhaust unavailable

ones." *Id.* The Court reviewed various circumstances in which

administrative remedies had been deemed by courts to be

unavailable and noted the record in *Ross* "raise[d] questions

about whether [the plaintiff] . . . had an 'available' remedy to

exhaust." *Id.* at 1859. The Supreme Court, therefore, remanded

to the lower court to determine whether "the remedies [the

plaintiff] failed to exhaust were 'available' under the

principles set out" by the Court. *Id.* at 1862.

The administrative-exhaustion provision of the FSA,

like that of the PLRA, is set out in mandatory terms.  It permits a court the authority to reduce a defendant's sentence only "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal . . . or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."  Like the PLRA, the exhaustion requirement of the FSA is not a "judge-made exhaustion doctrine," but instead it is a "statutory exhaustion provision."  Thus, as the Supreme Court explained in *Ross*, "it stands on a different footing. . . . Congress sets the rules — and courts have a role in creating exceptions only if Congress wants them to . . . [and] judicial discretion" is "foreclosed."  *Ross*, 136 S. Ct. at 1857.  Unlike the PLRA, however, the FSA does not contain "its own, textual exception to mandatory exhaustion."  *Id*. at 1858.  The FSA does not require inmates to exhaust "such administrative remedies as are *available*," but instead it requires them either to exhaust completely their administrative remedies or to wait 30 days after they have submitted a request for compassionate release to the BOP to file with the court a motion for a reduction in sentence. Thus, in contrast to the PLRA, the FSA does not provide this Court with the authority to excuse Defendant's failure to exhaust his administrative remedies or to waive the 30-day waiting period.

Defendant, nonetheless, asserts the "purposes of

requiring exhaustion would not be advanced by ignoring equitable
bases for excusing exhaustion." Def.'s Suppl. Br. at 14.
Defendant contends exhaustion rules in other contexts serve to
promote agency autonomy or federal-state court comity and to
efficiently resolve a matter before it reaches the federal court.
*See, e.g., Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006)(PLRA
exhaustion).  In the context of the FSA, however, the BOP does
not have the autonomy to grant a reduction in sentence and it
serves only as a gatekeeper to bring the matter to a court's
attention for the grant of relief.  According to Defendant,
therefore, "just as in the habeas context and the PLRA context,"
this Court should excuse him from pursuing exhaustion because the
delay that would occur would cause him undue hardship.

        Although the Court retains the ultimate authority to
decide whether to reduce an inmate's sentence under the FSA, the
Court concludes it may only exercise that authority within the
strictures of the statute that grants it, and, as noted, the FSA
does not grant this Court the authority to consider whether to
reduce Defendant's sentence until the exhaustion criteria of the
FSA have been met.  This conclusion is supported by a number of
cases in which courts have addressed motions for compassionate
release under the FSA due to COVID-19 and found they do not have
the authority to address those motions when the defendants have
not first satisfied the exhaustion requirements of the FSA.  For

example, in *United States v. Raia* the government appealed the defendant's sentence.  No. GCO-002-E, 2020 WL 1647922, at *1 (3d Cir. Apr. 3, 2020).  While the government's appeal was pending in the Third Circuit and before the defendant had exhausted his administrative remedies with the BOP, the defendant filed a motion with the district court for compassionate release under the FSA "given the present pandemic caused by COVID-19."  *Id*. The district court denied the defendant's motion on the ground that his pending appeal divested the district court of jurisdiction.  The defendant did not appeal the district court's denial and instead filed a motion "asking [the Third Circuit] to decide his compassionate-release motion."  *Id.,* at *2.  The Third Circuit concluded it did not have the authority to decide the defendant's motion for compassionate release because § 3582 "requires those motions to be addressed to the sentencing court." *Id*. (citations omitted).  The Third Circuit noted it had the authority to remand the matter to the district court, but the court concluded any remand "would be futile" because the defendant "failed to comply with § 3582(c)(1)(A)'s exhaustion requirement:  BOP has not had thirty days to consider [the defendant's] request to move for compassionate release on his behalf, nor has [the defendant] administratively exhausted any adverse decision by BOP."  *Id*.  The Third Circuit observed the "exhaustion requirement . . . presents a glaring roadblock

foreclosing compassionate release at this point." *Id.*
Similarly, in *United States v. Eberhart,* No. 13-cr-00313, 2020 WL
1450745, at *2 (N.D. Cal. Mar. 25, 2020), the defendant filed an
emergency application for immediate release "in light of the
increasing risks to health that the coronavirus disease
(COVID-19) poses to incarcerated persons." *Id.*, at *1. The
defendant conceded he had not exhausted his administrative
remedies under the FSA, but he asserted "the exhaustion
requirement should be deemed satisfied or entirely dispensed with
due to the BOP's failure to address the dangers of the pandemic,
or that the 30-day lapse requirement should be waived as futile
in light of the pressing public health concerns." *Id.*, at *2.
The court concluded it lacked authority to grant the defendant's
motion. Similarly, in *United States v. Sloan*, No. 1:19-cr-10117-
IT-11 (D. Mass. Mar. 19, 2020), the defendant filed an emergency
motion to modify sentence and asked the court to reduce his four-
month sentence by two weeks. Def.'s Second Suppl. Br., Ex. 2
at 1. The court denied the defendant's motion and explained:

> The limited relief sought by Defendant may well be
> warranted in light of the pandemic due to
> COVID-19. . . . However, the court's jurisdiction
> to modify Defendant's sentence is constrained by
> statute. With limited exceptions, the court "may
> not modify a term of imprisonment once it has been
> imposed." 18 U.S.C. § 3582(c).
>
> Defendant seeks modification of his sentence on
> the basis that "extraordinary and compelling
> reasons warrant such a reduction." 18 U.S.C.
> § 3582(c)(1)(A)(i). However, that section

> requires a request to the warden of his facility
> first, and contemplates either a motion from the
> Director of the Bureau of Prisons, or by a
> defendant after exhaustion of his administrative
> rights. Defendant does not state that a request
> has been made to the warden.

Def.'s Second Suppl. Br., Ex. 2 at 1-2. The *Sloan* court noted the "pandemic raises a critical question of whether Congress and the President . . . should afford the courts or Bureau of Prisons greater flexibility regarding the continued imprisonment of non-violent offenders who have served the majority of their sentences," but the court ultimately concluded it did "not have authority [at present] to grant the requested relief." *Id.* In *United States v. Carver* the defendant moved to reduce his sentence pursuant to the FSA without indicating whether he had satisfied the exhaustion requirement of that statute on the ground that COVID-19 provided an extraordinary and compelling reason for the court to reduce his sentence. No. 4:19-CR-06044-SMJ, 2020 WL 1604968, at *1 (E.D. Wa. Apr. 1, 2020). The court denied the defendant's motion:

> The Court's authority to amend a criminal
> defendant's sentence of incarceration, once it
> has been imposed, is narrow. *See* 18 U.S.C.
> § 3582(c) ("The court may not modify a term of
> imprisonment once it has been imposed except that
> . . . ."). The only apparently relevant mechanism
> by which the Court could authorize Defendant's
> early release to home confinement permits a
> sentence reduction if the Court finds
> "extraordinary and compelling reasons warrant"
> such relief. *Id.* § 3582(c)(1)(A)(i). But that
> provision is only available "upon motion of the
> Director of the Bureau of Prisons, or upon motion

> of the defendant after the defendant has fully
> exhausted all administrative rights to appeal a
> failure of the Bureau of Prisons to bring a motion
> on the defendant's behalf or the lapse of 30 days
> from the receipt of such a request by the warden
> of the defendant's facility, whichever is
> earlier." *Id.* § 3582(c)(1)(A). The
> administrative exhaustion requirement admits of no
> exception.

*Id.* The court noted its "hands are bound by the statute. . . .

[It] is indisputable that the COVID-19 outbreak is unprecedented

and poses a heightened risk to those in this nation's prisons and

jails. Yet absent congressional action to relieve inmates of the

exhaustion requirement, the Court is unable to provide the relief

Defendant seeks." *Id.* In *United States v. Garza* the defendant

filed a motion for compassionate release pursuant to the FSA

before he exhausted his administrative remedies. The defendant

asserted the FSA, nevertheless, "allow[ed] the Court to modify

the term of imprisonment for 'extraordinary and compelling

reasons,'" such as the COVID-19 virus. No. 18 Cr. 1745, 2020 WL

1485782, at *1 (S.D. Cal. Mar. 27, 2020). The court, however,

noted the extraordinary and compelling provision of the FSA

> is only triggered . . . [when] (A) the Director of
> the Bureau of Prisons files a motion; or (B) the
> defendant files a motion "after the defendant has
> fully exhausted all administrative rights to
> appeal a failure of the Bureau of Prisons to bring
> a motion on the defendant's behalf or the lapse of
> 30 days from the receipt of such a request by the
> warden of the defendant's facility whichever is
> earlier."

*Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)). The court, therefore,

concluded it did not have the authority to grant the defendant's motion. In *United States v. Gileno* the defendant filed a motion to modify his sentence pursuant to the FSA on the ground that COVID-19 constituted an extraordinary and compelling reason to modify his sentence. No. 19 Cr. 161, 2020 WL 1307108, at *2 (D. Conn. Mar. 19, 2020). The court concluded the defendant had "not satisfied the requirement under 18 U.S.C. § 3582(c)(1)(A) to first request that the Bureau of Prisons file a motion on his behalf and then show that thirty days have passed without any BOP action. As a result, the Court cannot consider his motion to modify his sentence." *Id.*, at *3. *See also United States v. Zywotko*, No. 2:19 Cr. 113, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020)(the court denied the defendant's motion to reduce sentence because it "was filed by Defendant, not the BOP . . . [and] Defendant does not represent that he has exhausted all his administrative remedies with the BOP under § 3582(c)(1)(A)(i)"); *United States v. Clark*, 17-85-SDD-RLB, 2020 WL 1557397, at *3 (M.D. La. Apr. 1, 2020)(denying the defendant's motion to modify prison sentence pursuant to 18 U.S.C. § 3582(c) on the ground that the defendant did not exhaust his administrative remedies before bringing his motion).

Defendant cites a number of cases in which inmates have been released due to concerns about COVID-19, but those cases either do not address the exhaustion provision of the FSA or they

are distinguishable.  For example, in *United States v. Powell*,
No. 1:94-cr-00316 (D.D.C. Mar. 28, 2020), the court granted the
defendant's motion for compassionate release under the FSA.  The
court reasoned:

> "Defendant is 55-years-old, suffers from several
> respiratory problems (including sleep apnea and
> asthma), and has only 3 months remaining on his
> 262-month sentence." (Mot. at 1.)  The government
> does not oppose the relief sought.  In addition,
> the Court finds that requiring defendant to first
> seek relief through the Bureau of Prisons'
> administrative process would be futile because
> defendant has an open misdemeanor case in Superior
> Court which the Bureau of Prisons has advised
> defense counsel renders defendant ineligible for
> home confinement.

Def.'s Second Suppl. Br., Ex. 1 at 1.  The court, however, did
not cite any legal support for its authority to excuse the
defendant's failure to exhaust administrative remedies.  In
*United States v. Huneeus*, No. 1:19-cr-10117-IT-7 (D. Mass.
Mar. 17, 2020), the court granted the defendant's emergency
motion to modify his sentence pursuant to the FSA "in light of
the national state of emergency due to the global COVID-19
pandemic and [the defendant's] unique health circumstances."
Def.'s Second Suppl. Br., Ex. 3 at 1.  The court, however, sealed
the defendant's motion and the government's response, and it did
not indicate in its order whether the defendant had exhausted his
administrative remedies.  In *United States v. Muniz* the defendant
moved for compassionate release due to COVID-19.  No. 4:09-cr-
0199-1, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020).  The

defendant, however, had "exhausted all possible avenues for administrative release." *Id.* *United States v. Davis*, No. ELH-20-09 (D. Md. Mar. 30, 2020), concerned the government's motion for pretrial detention of defendant. Evaluation of a request for pretrial detention involves the Bail Reform Act, 18 U.S.C. § 3142, which is a different statutory scheme and analysis than that pertaining to an individual who has been convicted of a crime and sentenced by the court. Moreover, the Bail Reform Act does not contain an exhaustion requirement similar to the one in the FSA. In *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1 (E.D. Pa. Apr. 1, 2020), the defendant moved for compassionate release pursuant to the FSA, but only after he "complied with § 3582(c)(1)(A)'s 30-day lapse provision." Def.'s Second Suppl. Br., Ex. 8 at 3 n.6. Finally, in *United States v. Perez* the defendant filed a motion for compassionate release based on the FSA. 17 Cr. 513-3, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020). The defendant conceded he had not exhausted his administrative remedies, but he asserted the court could waive the exhaustion requirement "in light of the extraordinary threat posed — in his unique circumstances — by the COVID-19 pandemic." *Id.*, at *1. The court noted the exhaustion requirement of the FSA, but it pointed out that the Second Circuit has held "'[e]ven where exhaustion is seemingly mandated by statute . . ., the requirement is not absolute.'" *Id.,* at *2 (quoting *Washington v.*

*Barr*, 925 F.3d 109, 118 (2d Cir. 2019)).  Relying on *Washington*,
the *Perez* court found three circumstances in which courts may
excuse a failure to exhaust:  when it would be futile, when "'the
administrative process would be incapable of granting adequate
relief,'" and when "'pursuing agency review would subject
plaintiffs to undue prejudice.'"  *Id.* (quoting *Washington*, 925
F.3d at 119).  The *Perez* court found all of the *Washington*
exceptions applied, relied on *Washington* to support its
conclusion that it had the authority to waive the administrative-
exhaustion requirement of the FSA, and proceeded to waive the
administrative-exhaustion requirement of the FSA.  Thus, the
court's conclusion in *Perez* appears to support Defendant's
assertion that this Court may excuse the FSA's administrative-
exhaustion requirement.  *Washington*, however, was a case brought
pursuant to the Controlled Substances Act (CSA), 21 U.S.C. § 801,
which "does not mandate exhaustion of administrative remedies."
*Washington*, 925 F.3d at 116.  Courts have created a judicial-
exhaustion requirement for the CSA, but, as the Supreme Court
noted in *Ross*, "judge-made exhaustion doctrines, even if flatly
stated at first, remain amenable to judge-made exceptions."  136
S. Ct. at 1857 (citing *McKart v. United States*, 395 U.S. 185, 193
(1969)).  Thus, courts have the authority to excuse the
exhaustion requirement of the CSA.  In contrast, the exhaustion
provision of the FSA is statutorily created, and, therefore, as

the Supreme Court made clear in *Ross,* courts lack the authority
to excuse or to waive such an exhaustion requirement.  The court
in *Washington* also asserted "[e]ven [when] exhaustion is
seemingly mandated by statute or decisional law, the requirement
is not absolute."  925 F.3d at 118.  The *Washington* court relied
on the Supreme Court's decision in *McCarthy v. Madigan*, 503 U.S.
140 (1992), to support its assertion.  *McCarthy*, however, was
superseded by the PLRA, which, as noted, requires inmates to
exhaust their administrative remedies.  *Woodford v. Ngo*, 126 S.
Ct. 2378, 2393 (2006).  In addition, as noted, the Supreme Court
made clear in *Ross* that the PLRA contains "its own, textual
exception to mandatory exhaustion."  136 S. Ct. at 1858.  The FSA
does not contain such an exception.  In short, the cases on which
the *Perez* court relied involve statutes that either have a
judicially-created exhaustion requirement or that have their own
textual exceptions to the exhaustion requirement, but the *Perez*
court did not address the fundamental differences between the
exhaustion provisions at issue in *Washington* and *McCarthy* nor did
it reconcile those differences with its conclusion.  This Court,
therefore, finds the court's reasoning in *Perez* to be
unpersuasive because it is unsupported by law.

In summary, the Court concludes the administrative-
exhaustion provision of the FSA is mandatory; it is a
statutorily-created exhaustion provision rather than a

judicially-created provision; and the FSA does not include "its own textual exception" to the exhaustion provision. This Court, therefore, does not have the authority to excuse an inmate's failure to comply with the exhaustion provision of the FSA. Because Defendant has not satisfied the exhaustion provision of the FSA, this Court lacks the authority to address Defendant's Motion for Reduction of Sentence. Although this Court agrees with the *Carver* court's observation that it "is indisputable that the COVID-19 outbreak is unprecedented and poses a heightened risk to those in this nation's prisons and jails," 2020 WL 1604968, at *1, this Court, "absent congressional action to relieve inmates of the exhaustion requirement, . . . is unable to provide the relief Defendant seeks." *Id*.

Accordingly, the Court denies Defendant's Motion for Reduction of Sentence with leave to renew if the BOP denies his request for compassionate release or if the BOP does not decide Defendant's request for compassionate release within 30 days of the date that the BOP received Defendant's request.


## **CONCLUSION**

For these reasons, the Court **DENIES** Defendant's Motion (#318) for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) with leave to renew if the BOP denies Defendant's request for compassionate release or if the BOP

does not decide Defendant's request for compassionate release within 30 days of the date that the BOP received Defendant's March 24 or 25, 2020, request, whichever occurs first.

The Court **DIRECTS** counsel for the government to ensure a copy of this Opinion and Order is delivered to FCI Sheridan Warden Josias Salazar.

IT IS SO ORDERED.

DATED this 6th day of April, 2020.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge